UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON, UK
SUBSCRIBING TO POLICY
NO. B1230AP56189A14,

          Plaintiff,

v.                                     Case No. 6:16-cv-258-Orl-37GJK

OCEAN WALK RESORT
CONDOMINIUM ASSOCIATION,
INC.,

          Defendant.

---

## ORDER

    Certain Underwriters at Lloyd's of London is a group of insurers based in the United Kingdom. (Doc. 33, ¶ 5.) In this action, it asserts negligence and breach-of-contract claims against Defendant, Ocean Walk Resort Condominium Association, Inc. ("**Ocean Walk**"). (*Id.* ¶¶ 31–40.) Specifically, Plaintiff's claims are based on a December 3, 2014 flooding incident ("**Loss Event**") that damaged the property of its insured, Wyndham Worldwide ("**Wyndham**"). (*Id.* ¶¶ 21, 23.)

    In the midst of discovery, Plaintiff moved for summary judgment on all elements of its claims, excluding damages. (Doc. 77 ("**Partial MSJ**").) The Court heard oral argument on the Partial MSJ on December 14, 2016 ("**SJ Hearing**"). (*See* Doc. 96.) At the conclusion of the SJ Hearing, the Court stated that it was unable to issue a ruling on the existing record; hence it: (1) deferred further consideration of the Partial MSJ until after

the close of discovery; and (2) offered the parties an opportunity to submit supplemental briefing at that time.

Pursuant to these pronouncements—and subsequent written instruction from the Court (*see* Doc. 109), the parties submitted their supplemental briefing in March of 2017 (Docs. 111, 118). In the interim, Ocean Walk submitted its own motion for complete summary judgment on Plaintiff's claims. (Doc. 113 ("**Ocean Walk's MSJ**").) So this action presently contains cross motions for summary judgment.

For the reasons set forth below, the Court grants: (1) summary judgment in favor of Ocean Walk on Plaintiff's negligence claim ("**Negligence Claim**") (Doc. 33, ¶¶ 31–35); and (2) partial summary judgment in favor of Plaintiff on its breach-of-contract claim ("**Contract Claim**") (Doc. 33, ¶¶ 36–40). In doing so, the Court finds that Ocean Walk breached a contract between itself and Wyndham as a matter of law; nonetheless, factual disputes prevent the Court from entering summary judgment on the remaining elements of the Contract Claim.

## I.   BACKGROUND[1]

### A.   Property at Issue

The property at the center of this litigation is the Ocean Walk Resort ("**the Resort**"), located at 300 North Atlantic Avenue in Daytona Beach, Florida. (*See* Doc. 33, ¶ 3; Doc. 103, ¶ 3.) The Resort is comprised of two towers—the North Tower and the South Tower. (Doc. 71-1, p. 6.) .)

---

[1] Throughout this Order, pinpoint citations to the record reference the page numbers appended to the top of each document by the Court's filing system.

This action relates to the South Tower, which consists of: (1) timeshare units owned by Wyndham; and (2) condominium units owned by members of Ocean Walk. (*Id.* ¶ 3; Doc. 103, ¶ 3.) According to both parties, Ocean Walk is responsible for the ownership, maintenance, and control of the South Tower, including its common areas. (Doc. 33, ¶ 6; Doc. 103, ¶ 6.)

### B.    Alleged Contractual Relationships

Wyndam's percentage of ownership in the South Tower is calculated by the number of its timeshare units. (Doc. 33, ¶¶ 8, 36; Doc. 103, ¶¶ 8, 36.)  Wyndham then pays Ocean Walk assessment fees based on this percentage. (Doc. 33, ¶¶ 8, 36; Doc. 103.) In exchange, Ocean Walk agreed to provide all maintenance, service, and inspections necessary to maintain the wet-pipe fire suppression system ("**Sprinkler System**") and fire alarm panels in the South Tower. (Doc. 33, ¶¶ 8, 37; Doc. 103, ¶¶ 8, 37.)

In February of 2011, Ocean Walk retained Fire & Life Safety America, Inc. ("**Fire Safety**") to conduct all quarterly and annual inspections of the South Tower's Sprinkler System in accordance with Standard 25 of the National Fire Protection Association ("**NFPA 25**").[2] (Doc. 33, ¶ 9; Doc. 103, ¶ 9; Doc. 71-1, p. 6)

---

[2] The NFPA drafts and publishes "codes and standards intended to eliminate death, injury, property[,] and economic loss due to fire, electrical, and related hazards." *See Codes and Standard*s, NAT'L FIRE PROT. ASS'N, http://www.nfpa.org/codes-and-standards/all-codes-and-standards/list-of-codes-and-standards (last visited May 22, 2017). At the time of the Loss Event, the 2008 version of NFPA 25 was one of the many standards that had been adopted by the Florida State Fire Marshal and incorporated into the Florida Administrative Code. *See Notice: 11389951*, FLA. ADMIN. CODE & FLA. ADMIN. REGISTER, http://www.flrules.org/Gateway/View_notice.asp?id=11389951 (last visited May 30, 2017) (adopting the 2008 version of NFPA 25, effective April 25, 2012); *see also Notice: 15294104*, FLORIDA ADMIN. CODE & FLA. ADMIN. REGISTER,

- 3 -

Fire Safety typically performed annual inspections of the South Tower Sprinkler System each September. (Doc. 77-1, p. 19.) For example, in 2013, Fire Safety performed its annual inspection on September 25. (Doc. 77-3, p. 2.) In 2014—the year of the Loss Event— it conducted: (1) quarterly inspections of the South Tower Sprinkler System on January 7, April 21, and July 28; and (2) service calls and repairs on May 29 and October 31. (Doc. 33, ¶¶ 17, 18; Doc. 103, ¶¶ 17, 18.) But, according to the Complaint, neither Fire Safety nor any other licensed fire suppression contractor, conducted an annual or fourth-quarter inspection of the Sprinkler System in 2014. (Doc. 33, ¶¶ 19, 20.)[3]

### C.    Loss Event

On December 3, 2014 ("**Date of Loss**"), a coupling joining two sprinkler pipes failed in the stairwell on the thirteenth floor of the South Tower ("**Failed Coupling**"), precipitating a flood that resulted in damage to property owned by Wyndham. (*Id.* ¶¶ 21,

---

https://www.flrules.org/Gateway/View_notice.asp?id=15294104 (last visited May 30, 2017) (adopting the 2011 version of NFPA 25, effective December 31, 2014). In particular, NFPA 25 governs the inspection, testing, and maintenance of water-based fire protection systems in Florida. NAT'L FIRE PROT. ASS'N, NFPA 25, STANDARD FOR THE INSPECTION, TESTING, AND MAINTENANCE OF WATER-BASED FIRE PROTECTION SYSTEMS, 2008 EDITION § 4.1.1 (2007), http://www.nfpa.org/codes-and-standards/all-codes-and-standards/list-of-codes-and-standards/detail?code=25&year=2008. *Inter alia*, it requires that property owners obtain annual and quarterly inspections of such systems. *Id.* § 1.1, tbl.5.1.

[3] In its Answer, Ocean Walk states that it "can neither admit nor deny th[ese] allegation[s]." (Doc. 103, ¶¶ 19, 20.) Under Federal Rule of Civil Procedure 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." As such, the Court construes Ocean Walk's response to these allegations as an admission. Notably, Ocean Walk did not state that it lacked knowledge or information concerning this allegation, though it did so elsewhere in its Answer with respect to other allegations.

23; Doc. 103, ¶¶ 21, 23.) Following the Loss Event, Fire Safety completed a service call in the South Tower to replace the Failed Coupling. (Doc. 33, ¶ 22, Doc. 103, ¶ 22.)

### D.   Applicable Policy

On the Date of Loss, Wyndham was insured under a Global Property Insurance Policy ("**Policy**") issued by Plaintiff. (Doc. 1-1.) The Policy provided coverage "against all risk of direct physical loss or damage" to real and personal property owned by Wyndam worldwide, except where excluded by U.S. embargo. (*See id.* at 5, 8, 9–10, 53.) Pursuant to the Policy, Plaintiff alleges that Wyndham submitted, and Plaintiff paid, an insurance claim for more than $3 million in property damage incurred as a result of the Loss Event, less Wyndham's deductible. (Doc. 33, ¶¶ 25, 26.) Plaintiff also claims that, under the Policy, it is obligated to reimburse Wyndham for $2,047,396.00 in lost profits and $396,889.00 in extra expenses. (*Id.* at 27, 28.)

### E.   This Action

Seeking to recover these damages, Plaintiff filed this suit against Fire Safety and Ocean Walk on February 16, 2016, claiming subrogation to the rights of Wyndham. (Doc. 1.) In addition to its Negligence and Contract Claims against Ocean Walk (respectively, "**Counts I and II**"), Plaintiff originally asserted claims against Fire Safety for ordinary negligence and professional negligence. (*See* Doc. 33 ¶¶ 31–53.) On October 27, 2016, Plaintiff voluntarily dismissed its claims against Fire Safety (*see* Doc. 92); hence only the claims against Ocean Walk remain in this action.

As previously set forth, Plaintiff and Ocean Walk have each moved for summary judgment on Counts I and II. (*See* Docs. 77, 113 ("**Motions**").) The Motions have been fully briefed and are ripe for the Court's consideration.

## II.   LEGAL STANDARDS

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which it would bear the burden of proof at trial, the "movant must affirmatively show the absence of a genuine issue of material fact, and support its motion with credible evidence demonstrating that no reasonable jury could find for the non-moving party on all of the essential elements of its case." *Landolfi v. City of Melbourne, Fla.*, 515 F. App'x 832, 834 (11th Cir. 2013) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993)). As to issues for which the non-movant would bear the burden of proof at trial, the movant has two options: (1) the movant may simply point out an absence of evidence to support the non-moving party's case; or (2) the movant may provide "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citing *Celotex Corp.*, 477 U.S. at 324 (majority opinion), 331 (Brennan, J., dissenting)).

"The burden then shifts to the non-moving party, who must go beyond the pleadings[] and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–

17). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Four Parcels*, 941 F.2d at 1437. "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *Battle v. Bd. of Regents for Ga.*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

### III.   ANALYSIS

In its Partial MSJ, Plaintiff argues that it has proffered sufficient evidence to establish all elements of its Negligence and Contract Claims, save for damages. (Doc. 77, 91, 110, 117.) Ocean Walk's MSJ is primarily based on the absence of a cognizable duty underlying Plaintiff's claims, while its opposition to the Partial MSJ rests on factual disputes. (*See* Docs. 79, 113, 118 122.) With respect to Plaintiff's Contract Claim, Ocean Walk argues that: (1) Plaintiff cannot state a claim for breach of an *implied* contract due to the existence of an express contract governing the same subject matter—that is, the declarations governing the condominium and timeshare properties in the South Tower (Docs. 114–16 ("**Declarations**")); (2) Plaintiff was not authorized to delegate its own duty

under NFPA 25 to inspect and maintain the South Tower Sprinkler System; and (3) material questions of fact exist concerning whether Plaintiffs' damages resulted from the alleged breached. (Docs. 79, 113, 118.) With respect to the Negligence Claim, Ocean Walk argues that: (1) Plaintiff cannot rely on NFPA 25 to establish a duty because flooding is not a harm the NFPA was designed to prevent; (2) the existence of the Declarations foreclose the Negligence Claim; and (3) conflicting causation evidence precludes the entry of summary judgment in Plaintiff's favor. (Docs. 79, 113, 118, 122.) Below, the Court addresses each claim.

### A.     Contract Claim

As a preliminary matter, Ocean Walk's papers reference confusion over the type of contract claim asserted in the Complaint. (Doc. 79, p. 8; Doc. 113, p. 8, n.3; Doc. 118, pp. 4–5.) True enough, Plaintiff titled its Contract Claim as one for "Breach of Implied Contract." (Doc. 33, p. 11.) Yet the Court's own review of the Complaint reveals allegations of both an express and implied agreement on the part of Ocean Walk to procure all necessary inspection and maintenance of the South Tower Sprinkler System. (*See* Doc. 33, ¶ 8 ("**Express Contract Allegation**"); *id.* ¶ 37 ("**Implied Contract Allegation**").) The Court initially construed these allegations as alternative claims for breach of express contract and breach of an implied-in-fact contract;[4] but, in its Partial MSJ, Plaintiff relies only on its Express Contract Allegation. (*See* Doc. 77, pp. 3, 9 (referencing paragraph 8 of the Complaint, which alleges an express agreement).)

---

[4] Ocean Walk correctly points out that Plaintiff has not plead the necessary elements to sustain a claim for breach of a contract implied in law. (Doc. 79, pp. 8–9.)

Accordingly, the Court concludes that Plaintiff has abandoned any implied contract claim and intends only to proceed on an express contract theory.[5] To prevail, Plaintiff must prove "(1) the existence a contract; (2) a breach of the contract, and (3) damages resulting from the breach." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

### 1.    Existence of a Valid Contract

To demonstrate the existence of a valid contract, Plaintiff relies on the following allegation and admission in the pleadings:

> <u>Complaint:</u> Wyndham pa[id] [Ocean Walk] assessment fees based on its percentage (calculated by unit) of ownership in the South Tower[] [and,] [i]n exchange for those fees, [Ocean Walk] agreed to provide, in part, all maintenance, service, and inspections necessary to maintain the [Sprinkler System] and all fire alarm panels in the South Tower ("**Contract**") (Doc. 33, ¶ 8);
>
> <u>Answer:</u> Admitted. (Doc. 103 ¶8.)

(Doc. 77, p. 11; Doc. 91, pp. 2, 8.) To rebut this element of Plaintiff's Contract Claim, Ocean Walk contends that Plaintiff did not properly delegate its own duty under NFPA 25 to inspect, maintain, and service the Sprinkler System. (Doc. 79, p. 10.) In support, Ocean Walk relies on §§ 4.1.1 and 4.1.2.3 of NFPA 25, which provide, in pertinent part, that:

> The responsibility for properly maintaining a water-based fire protection system shall be that of the owner of the property. . . . Where the property owner is not the occupant,

---

[5] As formerly mentioned, Ocean Walk attacks Count II on the ground that its contractual relationship with Wyndham is governed by the Declarations; therefore, Ocean Walk contends that Plaintiff cannot recover under an implied contract theory because the Declarations constitute an express contract concerning the same subject matter as the Implied Contract Allegation. (*See* Doc. 113, pp. 9–10.) In the absence of an implied contract claim, the Court easily rejects Ocean Walk's argument. Moreover, Ocean Walk has not raised the issue of whether the parties are foreclosed from entering into separate *express* agreements.

> the owner may pass on the authority for inspecting, testing, and maintaining the fire protection systems to the occupant, management firm, or managing individual through specific provisions in the lease, written use agreement, or management contract.

("**the Delegation Clause**"). Based on the Delegation Clause, Ocean Walk argues that: (1) the record is devoid of any evidence of a lease provision, written use agreement, or management contract whereby Wyndham delegated its duty to inspect and maintain the Sprinkler System; and (2) if such contract exists, it is barred by public policy because there is no evidence that it was in writing. (*See* Doc. 79, pp. 9–10.) Not so.

To start, Ocean Walk's first argument is belied by the record, as its Answer admits that: (1) Wyndham is a non-occupant owner of property in the South Tower[6]; (2) Ocean Walk manages the South Tower[7]; and (3) Ocean Walk and Wyndham entered into a Contract under which Wyndham delegated its duty to maintain, serve, and inspect the Sprinkler System in the South Tower.[8] *See* Fed. R. Civ. P. 56(c) (stating that a party may support its factual positions on summary judgment with admissions and that the Court may consider any materials in the record).

Further, contrary to Ocean Walk's position, the Delegation Clause does not impose

---

[6] (*See* Doc. 33, ¶ 3; Doc. 103, ¶ 3 (admitting that the Wyndham-owned timeshare units in the South Tower are held by another entity, Ocean Walk Vacation Ownership Association).)

[7] (*See* Doc. 33, ¶ 6; Doc. 103, ¶ 6 (admitting that Ocean Walk is responsible for the ownership, maintenance, and control of the South Tower, including its common areas).)

[8] (*See* Doc. 33, ¶ 8; Doc. 103 ¶8 (admitting that "Wyndham pa[id] [Ocean Walk] assessment fees based on its percentage (calculated by unit) of ownership in the South Tower[] [and] [i]n exchange for those fees, [Ocean Walk] agreed to provide, in part, all maintenance, service, and inspections necessary to maintain the [Sprinkler System] and all fire alarm panels in the South Tower").)

a "strict writing requirement" on these facts. To be sure, under Florida law, it is well settled that where the language of a regulation is clear, unambiguous, and conveys a clear and definite meaning, it needs no interpretation or construction and is itself an expression of the drafter's intent. *See Osborne v. Simpson*, 94 Fla. 793, 795-96 (1927) (citing *Fine v. Moran*, 74 Fla. 417 (1917)); *see also M.W. v. Davis*, 756 So.2d 90, 101 (Fla. 2000). By its terms, the Delegation Clause unambiguously permits a non-occupant property owner to delegate its duties under NFPA 25 through: (1) specific lease provisions; (2) a written use agreement; or (3) a management contract. NFPA 25 §§ 4.1.1, 4.1.2.3. Of these three avenues, only delegation via use agreement carries a writing requirement. *See* NFPA 25 § 4.1.2.3.

Here, the pleadings demonstrate the existence of a contract delegating the *management* of the sprinkler and fire alarm systems in the South Tower, as Ocean Walk agreed to assume responsibility for the maintenance, service, and inspection of the South Tower Sprinkler System in exchange for the payment of assessment fees.[9] (*See* Doc. 33, ¶ 8; Doc. 103 ¶8.) The Delegation Clause simply does not require that delegation via management contract be in writing.

Ocean Walk's imposition of a writing requirement in this instance would require the Court to add terms to the plain language of the Delegation Clause. But had the drafters intended to mandate that the delegation of an owner's duties under NFPA 25

---

[9] Notably, Black's Law Dictionary defines the term "manager" as "someone who administers or supervises the affairs of a business, office, or other organization." *Manager*, <u>Black's Law Dictionary</u> (10th ed. 2014). In contrast, it defines the term "use" as "[t]he application or employment of something." *Use*, <u>Black's Law Dictionary</u> (10th ed. 2014).

always be in writing, they could have so declared. This is evinced by other NFPA Standards, which explicitly require that the delegation of an owner's duties be in writing. *See*, *e.g.*, NAT'L FIRE PROT. ASS'N, NFPA 72, NATIONAL FIRE ALARM CODE, 2007 EDITION §§ 10.2.2.2–10.2.2.3 (2006),[10] http://www.nfpa.org/codes-and-standards/all-codes-and-standards/list-of-codes-and-standards/detail?code=72&year=2007 (stating that the delegation of an owner's responsibility to inspect, test, and maintain fire *alarm* systems "shall be in writing" and may "be done by a person or organization other than the owner *if conducted under written contract*" (emphasis added)).

Absent a writing requirement, Ocean Walk does not present any further argument with respect to the validity of the Contract. So, based on Ocean Walk's admissions, the Court finds that the parties entered into a binding contract as a matter of law, delegating Wyndham's duty to inspect and maintain the South Tower Sprinkler System to Ocean Walk.

### 2.      Breach

Having determined that a valid contract exists, the Court now turns to the element of breach. In its Partial MSJ, Plaintiff argues that "[Ocean Walk] breached the duties it owed Wyndham by failing to have an NFPA 25-compliant annual inspection of the

---

[10] There is no 2008 edition of NFPA 72. On the Date of Loss, the 2007 version of NFPA 72 had been adopted and incorporated into the Florida Administrative Code. *See Notice: 11389951*, FLA. ADMIN. CODE & FLA. ADMIN. REGISTER, http://www.flrules.org/Gateway/View_notice.asp?id=11389951 (last visited June 30, 2017) (adopting the 2007 version of NFPA 25, effective April 25, 2012); *see also Notice: 15294104*, FLA. ADMIN. CODE & FLA. ADMIN. REGISTER, https://www.flrules.org/Gateway/View_notice.asp?id=15294104 (last visited June 30, 2017) (adopting the 2010 version of NFPA 25, effective December 31, 2014).

[Sprinkler System] in the South Tower performed in 2014." (Doc. 77, p. 2; *see also id.* at 9, 11.) Ocean Walk neither disputes nor addresses this argument.

Based on the pleadings, Ocean Walk has admitted breach. Specifically, its Answer states—without explanation—that it cannot admit or deny Plaintiff's allegation that "[n]either [Fire Safety] nor any other licensed fire suppression contractor, conducted an annual inspection of the [Sprinkler System] in the South Tower in 2014." (Doc. 33, ¶ 20; Doc. 103, ¶ 20.) As previously stated, this is not a permitted response under Rule 8(b), so it is deemed an admission. *Supra* note 3; *see also* Fed. R. Civ. P. 8(b)(6).

Moreover, defense expert Dennis "Buddy" Dewar ("**Dewar**") testified that the 2014 annual inspection of the Sprinkler System was not timely under NFPA 25 requirements. (Doc. 112-3, p. 13) (testifying that the 2014 annual inspection occurred sixty days late and that, as a code enforcement officer, he would have notified the property owner that the South Tower Sprinkler System had not been inspected on the proper timeline). Absent any other explanation or rebuttal evidence, it follows that, having assumed the duty to procure all necessary inspections of the South Tower Sprinkler System under the Contract, Ocean Walk breached its duty by failing to perfect an annual inspection in 2014. Thus, based on the unchallenged record, the Court concludes that Plaintiffs have established contractual breach as a matter of law. *See* Fed. R. Civ. P. 56(e) (providing that if a party fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the motion).

### 3. Damages Resulting from the Breach

To obtain summary judgment on the final element of its Contract Claim, Plaintiff

must prove that its damages resulted from Ocean Walk's breach as a matter of law. "Damages recoverable by a party injured by a breach of contract are those that naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered into." *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002). "It is not necessary to prove that the parties contemplated the precise injuries that occurred so long as the actual consequences could have reasonably been expected to flow from the breach." *Id.* at 1281.

The parties' disagreement on this element is as follows. Plaintiff claims that if an annual inspection had been performed on the South Tower Sprinkler System in 2014, the inspector would have detected the corrosion and replaced the Failed Coupling, thus preventing the Loss Event. (Doc. 77, p. 5; Doc. 110, p. 2.) Ocean Walk counters that material questions of fact exist as to whether the Loss Event resulted from Ocean Walk's failure to schedule the annual inspection of the Sprinkler System in 2014. (Doc. 79, pp. 5–8, 10–11.) In particular, Ocean Walk takes issue with Plaintiff's assumptions that an inspection company would necessarily have: (1) identified the Failed Coupling as corroded during a 2014 annual inspection; and (2) replaced the Failed Coupling following a timely inspection and prior to the Date of Loss. (Doc. 118, p. 6.)

Upon consideration, the Court agrees with Ocean Walk that these are questions of fact for a jury to decide. Based on the evidence, a reasonable jury could plausibly find it more likely than not that, at the time of contracting, damage resulting from the escape of water held in a high-pressure mechanism was a natural consequence of the failure to timely inspect the integrity of the South Tower Sprinkler System. But, as set forth below,

the Court cannot make this inferential leap as a matter of law, particularly given Ocean Walk's proffered evidence that an inspector may not have detected corrosion on the Failed Coupling or replaced it.

### i.      Proffered Evidence and Argument

To establish a causal link, Plaintiff relies on the report of its forensic expert, Stephen Kowkabany ("**Kowkabany**"), a professional engineer. (*See* Doc. 77, pp. 5, 9–10; *see also* Doc. 84-1, pp. 10–20) ("**Kowkabany Report**").)[11] In his Report, Kowkabany opines that: (1) the coupling at issue failed because one of two bolts holding it in place was severely corroded; and (2) in light of Fire Safety's previous repairs of corroded standpipe piping sections in the South Tower's south stairwell, "it is reasonable to assume that [Fire Safety] likely would have recommended the replacement of the [Failed Coupling], which was in an advance state of corrosion around the failed bolt assembly, before the [Loss Event]." (Doc. 84-1, pp. 15–16.)[12] Based on these opinions, Plaintiff argues that the Loss Event would not have occurred but for Ocean Walk's failure to have the annual inspection completed at the proper time in 2014. (Doc. 77, p. 10.)

In rebuttal, Ocean Walk points to: (1) the deposition testimony of Fire Safety inspectors Joe Bell ("**Bell**") and Steve Skiver ("**Skiver**"); (2) inspection reports created by

---

[11] Plaintiff initially filed the Kowkabany Report as an attachment to its Partial MSJ. (Doc. 77-2.) Ocean Walk moved to strike it because it was unsworn. (Doc. 78.) The Court later allowed Plaintiff to resubmit a sworn report. (Doc. 83.) Plaintiff did so by refiling the Kowkabany Report with an affidavit in which Kowkabany attests to his competency to opine on the matters contained in the Kowkabany Report. (Doc. 84-1, pp. 1–3, 10–21.)

[12] It is worth noting that Plaintiff cites the Kowkabany Report for several propositions that do not actually appear therein. (*Compare* Doc. 77, p. 5, *with* Doc. 84-1, pp. 15–16.)

Fire Safety inspectors Mike Wells ("**Wells**") and Clint Fisher ("**Fisher**"); and (3) Dewar's affidavit.[13] (Doc. 79, pp. 6–8.)

Bell was the inspections manager for Fire Safety from 2013 to 2014. (Doc. 79-2, p. 8.) Prior to his promotion, he conducted annual inspections in the South Tower in 2011 and perhaps 2012.[14] (Doc. 79-2, p. 12; *see also id.* at 8, 20.) At his deposition, Bell testified that: (1) during annual inspections, he performs a visual inspection of all visible components, including "the system itself, sprinklers, piping, all visible connections," and stairwells; (2) had he conducted an annual inspection in 2014, he would have inspected the Failed Coupling; and (3) had he seen a coupling in a condition similar to that of the Failed Coupling, he would have noted it in a deficiency report.[15] (*Id.* at 20, 22, 26–27.)

Skiver testified that he conducted a quarterly inspection of the Sprinkler System in the South Tower on April 21, 2014, and generated a report on April 22, 2014 (Doc. 79-7, pp. 6, 9; *see also id.* at 23–72 & Doc. 79-8 ("**Skiver's Report**")).[16] While physical inspection of couplings is not required during quarterly inspections, Skiver testified that if he ever

---

[13] Dewar prepared an affidavit, gave deposition testimony, and prepared a report wherein he offers multiple opinions regarding NFPA 25, the length of time corrosion was present on the Failed Coupling, and the likely causes of corrosion. (Doc. 79-9 ("**Affidavit**"); Doc. 111-1; Doc. 125-1.) On Plaintiff's motion (Doc. 112), the Court struck Dewar's testimony regarding the cause of the corrosion at a hearing on June 20, 2017, but permitted him to testify that corrosion was present on the Failed Coupling for a significant amount of time. (Doc. 133.)

[14] Bell initially testified that he performed annual inspections at the South Tower in 2011 and 2012; he then qualified that he was not certain he completed one in 2012. (Doc. 79-2, p. 12.)

[15] According to Bell, a deficiency report is a recommendation made to the client by the inspector of things that should be repaired or replaced. (Doc. 79-2, p. 27.)

[16] Skiver's Report begins on page 23 of Doc. 79-7 and continues through Doc. 79-8.

saw corrosion on a coupling during a quarterly inspection he would have noted it on his report. (Doc. 79-7, pp. 8–9.) However, Skiver's Report did not note any deficiencies with respect to the thirteenth floor stairwell where the Loss Event occurred. (*Id.* at 10, 13.)

Though Wells and Fisher did not testify, record evidence shows that they conducted annual inspections of the Sprinkler System in the South Tower in 2013 and generated reports to document their findings. (*See* Docs. 79-3, 79-4, 79-5, 79-6.) Neither report noted deficiencies in the thirteenth floor stairwell. (Doc. 79-3, pp. 5–6; Doc. 79-5, pp. 5–6.)

Ocean Walk's rebuttal evidence is tied together by Dewar's Affidavit. (Doc. 79-9.) Specifically, Dewar opines that: (1) the Failed Coupling had been corroded for a lengthy period of time; (2) "[t]he quarterly inspections done by [Fire Safety] in 2014 and the prior annual inspection done in 2013 did not reveal the corroded nature of the coupling"; (3) "[t]here is a significant probability the corroded coupling would not have been identified had an annual inspection been performed prior to the underlying incident"; and (4) "the [Fire Safety] inspectors did not ever assess the corrosion of the coupling as significant or severe." (Doc. 79-9, ¶¶ 6–9.) Relying on Dewar's Affidavit, Ocean Walk argues that even if annual and fourth-quarter inspections had been timely performed in the South Tower in 2014, Fire Safety may not have noticed that the Failed Coupling was corroded—thus creating a material issue of fact as to whether the Loss Event definitively resulted from the non-performance of such inspections.[17] (*See* Doc. 79, pp. 5–8.)

---

[17] Ocean Walk also argues that questions of fact remain because "corrosion is a gradual process." (Doc. 79, pp. 7–8.) In support, Ocean Walk points to statements made

In its reply, Plaintiff claims that Ocean Walk's evidence does not raise an issue of material fact. First, Plaintiff complains that Dewar's opinions contradict Ocean Walk's prior admissions—namely, the Fire Safety inspectors' testimony that they would have recommended replacement of the Failed Coupling had they seen it in a corroded state prior to the Loss Event. (Doc. 91, p. 7.) Plaintiff also contends that the action or inaction of Fire Safety does not cut off Ocean Walk's liability for the Loss Event. (*Id.* at 7–8.)

ii.   **Analysis**

Plaintiff's arguments are not well taken. First, Dewar's Affidavit is entirely consistent with the testimony of Bell, Skiver, Wells, and Fisher (collectively, "**Inspectors**"). As illustrated below, Plaintiff's argument is that the absence of a 2014

---

in *Board of Trustees of Sante Fe Community College v. Caudill Rowlett Scott, Inc.*, 461 So.2d 239 (Fla. 1st DCA 1984).  In *Caudill*, the court discussed the statute of limitations ("**SOL**") period for a suit arising from the corroded condition of underground pipes on a college campus. 461 So. 2d at 241. In reversing the trial court's grant of summary judgment, the appellate court stated that the lack of evidence of corrosion prior to the date it was discovered, "coupled with the observation that corrosion is an ongoing process that may take many years to manifest itself, allows a reasonable inference that the leaks which occurred prior to [the applicable SOL period] were not due to corrosion." *Caudill*, 461 So.2d 243–44.

Ocean Walk attempts to apply the foregoing statement to support the inference that the Loss Event did not result from the failure to conduct the annual and fourth-quarter inspections in 2014 because Fire Safety may not have noticed the corrosion. (*See* Doc. 79, pp. 5–8.) But, unlike *Caudill*, the SOL is not at issue here. Moreover, record evidence proffered by Ocean Walk supports a finding that corrosion was visible on the Failed Coupling prior to the Date of Loss. In fact, both of Ocean Walk's expert witnesses—Adam Gress ("**Gress**") and Dewar—testified that the corrosion would have been present for a significant period of time. (*See* Doc. 111-3, p. 10; *see* Doc. 79-9, ¶ 6.) Gress even went so far as to testify that he could say within reasonable degree of engineering certainty that: (1) in September of 2014, the Failed Coupling looked similar to how it looked on the Date of Loss; and (2) "the corrosion was definitely visible prior to the loss."(Doc. 111-3, p. 10.) Therefore, the Court rejects Ocean Walk's argument as inapposite.

annual inspection prevented detection of the corrosion on the Failed Coupling which, in turn, prevented replacement of the Failed Coupling prior to the Date of Loss, thereby resulting in the Loss Event.

<u>Plaintiff's Argument</u>

No 2014 annual inspection

↓

No detection of corrosion

↓

No replacement of Failed Coupling

↓

Loss Event.

The Inspectors testified that they would have recommended replacement of the Failed Coupling *if* they *had seen* the corroded state of the Failed Coupling. Dewar opines that because the Inspectors *did not see* the corrosion during the 2013 annual inspection or the 2014 quarterly inspections—as inferable from the lack of notations in their deficiency reports—they would not have seen it during a 2014 annual inspection. This does not contradict the Inspectors' testimony. And even disregarding Dewar's Affidavit, questions of fact still remain, as Gress also opined that it was probable that the corrosion on the Failed Coupling was visible for a significant period of time and could have been there "anywhere from weeks to years." (*See* Doc. 113-3, p. 10.) Given the possibility that the corrosion was there for years and the Inspectors failed to note any deficiencies on the Failed Coupling during their previous inspections, a reasonable juror may conclude, as

Ocean Walk suggests, that Fire Safety inspectors were performing their inspections in such a manner that they would not have flagged the Failed Coupling for replacement even if they had performed an annual inspection in 2014.

Second, the Inspectors' actions are relevant here. Plaintiff's Partial MSJ asks the Court to make a conclusive determination that its damages resulted from Ocean Walk's breach. As Ocean Walk argues, such a determination would require the Court to make the following findings of fact: (1) if Ocean Walk had scheduled a 2014 annual inspection, the inspector would have detected corrosion on the affected coupling; (2) the inspector would have recommended that Ocean Walk replace the affected coupling; and (3) Ocean Walk would have replaced the coupling prior to the Date of Loss. Ocean Walk's evidence calls into question the first two of these assumptions, creating a factual dispute that the Court cannot resolve on summary judgment. Plaintiff has not otherwise convinced the Court that the Inspectors' actions are irrelevant to assessing the causal link between Plaintiff's damages and Ocean Walk's breach.

While the Court makes no judgment as to whether Ocean Walk's evidence is sufficient to succeed d at trial, it *is* sufficient to create a material issue of fact and survive summary judgment. Accordingly, summary judgment is due to be granted in Plaintiff's favor on the first two elements of its Contract Claim but denied with respect to the final element, as the conflicting evidence must be resolved by a jury.[18]

---

[18] Plaintiff admits that a dispute remains as to the amount it is entitled to recover. (Doc. 77, p. 7.)

### B.    Negligence Claim

With respect to Count I, the Court finds that Plaintiff's Negligence Claim is barred under Florida law. To prevail, Plaintiff must establish: (1) duty; (2) breach; (3) causation; and (4) harm. *Florida Dept. of Corrs. v. Abril*, 969 So.2d 201, 205 (Fla. 2007). However, the alleged duty in its tort claim cannot stem from a contractual relationship between the parties. *See Tiara Condo. Ass'n Inc. v. Marsh & McLennan Cos.*, 110 So.3d 399, 408–09 (Fla. 2013) (Pariente, J., concurring).[19] As cited in Justice Pariente's concurrence, "a breach

---

[19] Prior to the Supreme Court of Florida's decision in *Tiara Condominium Association, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013), courts had applied Florida's economic loss rule to routinely bar tort actions "when the parties [were] in contractual privity and one party [sought] to recover [purely economic] damages in tort for matters arising from the contract." *See Tiara*, 110 So. 3d at 401–402 (majority opinion). But in *Tiara*, the majority definitively limited the application of the economic loss rule to products liability cases. *Id.* at 400, 407. While fully concurring with the majority's conclusion, Justice Pariente wrote separately to state her view that the decision "d[id] not undermine Florida's contract law or provide for an expansion in viable tort claims." *Id.* at 408 (Pariente, J., concurring). In doing so, Justice Pariente explained that "[b]asic common law principles already restrict the remedies available to parties who have specifically negotiated those remedies . . . . For example, in order to bring a valid tort claim, a party must still demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim." *Id.*; *see also id.* at 409–10 (explaining that, outside the economic loss rule, "fundamental contractual principles already properly delineate the general boundary between contract and tort law").

Justice Pariente's concurrence in *Tiara* has been cited both with caution and approval by the U.S. Court of Appeals for the Eleventh Circuit. *Compare Lamm v. State St. Bank & Trust*, 749 F.3d 938, 947 (11th Cir. 2014) (stating that, notwithstanding the limitation of the economic loss rule in *Tiara*, the decision *may* "have left intact a separate hurdle, namely that 'a party still must demonstrate that the tort is independent of any breach of contract claim'"), *with Lookout Mountain Wild Animal Park, Inc. v. Stearns Zoological Rescue & Rehab Ctr., Inc.*, 553 F. App'x 864, 866 (11th Cir. 2014) (citing Justice Pariente's concurrence in support of its conclusion that the plaintiff had not identified any tortious acts sufficiently independent of the alleged breach of contract to render the tort claims viable). Despite the lack of consensus from the Eleventh Circuit, the

of contract, alone, cannot constitute a cause of action in tort . . . [i]t is only when the breach of contract is attended by some additional conduct which amounts to an independent tort that such a breach can constitute negligence." *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986). Thus, to establish its claim for negligence, Plaintiff must demonstrate that "the tort is independent of [its] breach of contract claim." *Tiara*, 110 So. 3d at 408 (Pariente, J., concurring) (quoting *Lewis v. Guthartz*, 428 So. 2d 222, 224 (Fla. 1982)).[20]

Here, it is clear that the facts supporting Plaintiff's Contract Claim are indistinguishable from those supporting its Negligence Claim. Indeed, Plaintiff's Negligence Claim is predicated upon the same facts as its Contract Claim—that is, Ocean Walk's nonperformance of its promise to conduct all maintenance and inspections necessary to maintain the Sprinkler System in the South Tower.[21] (*See* Doc. 77, p. 11 (conceding that "the analysis applicable to Plaintiff's negligence claim applies to its breach of contract claim"). Given the absence of any legal duty independent of Ocean Walk's Contract with Wyndham, the Court finds that Plaintiff's Negligence Claim fails

---

Undersigned is persuaded by Justice Pariente's reasoning and has applied it in its analysis of Plaintiff's Negligence Claim.

[20] *See also Goldson v. KB Home*, No. 8:17-cv-340-T-24AEP, 2017 WL 1038065, at *3 (M.D. Fla. Mar. 17, 2017); *Callaway Marine Techs., Inc. v. Tetra Tech, Inc.*, No. 16-cv-20855-GAYLES, 2016 WL 7407769, at *3–5 (S.D. Fla. Dec. 22, 2016); *Kaye v. Ingenio, Filiale de Loto-Quebec, Inc.*, No. 13-61687, 2014 WL 2215770, at *3–5 (S.D. Fla. May 29, 2014).

[21] Plaintiff attempts to create a distinction by grounding: (1) the duty alleged in its Negligence Claim in Ocean Walk's statutory duty under the NFPA 25; and (2) the duty alleged in its Contract Claim in Ocean Walk's agreement under the Contract. But, as the Delegation Clause makes clear, no statutory duty arises without a contract on these facts.

as a matter of law and that summary judgment is due to be granted in Ocean Walk's favor.

IV.     CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.      Plaintiff's Motion for Partial Summary Judgment against Defendant, Ocean Walk Resort Condominium Association, Only (Doc. 77) is **GRANTED IN PART AND DENIED IN PART**.

   a.      To the extent that Plaintiff seeks summary judgment on its Contract Claim with respect to the elements of breach and duty, the Motion is **GRANTED**.

   b.      In all other respects, the Motion is **DENIED**.

2.      Defendant Ocean Walk Resort Condominium Association, Inc.'s Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 113) is **GRANTED IN PART AND DENIED IN PART**.

   a.      To the extent that Ocean Walk seeks summary judgment on Plaintiff's Negligence Claim, the Motion is **GRANTED.**

   b.      In all other respects, the Motion is **DENIED**.

3.      The Clerk is **DIRECTED** to enter judgment on Count I (Doc. 33, ¶¶ 31–35) in favor of Defendant Ocean Walk Resort Condominium Association, Inc. and against Plaintiff Certain Underwriters at Lloyd's of London, UK subscribing to Policy No. B1230AP56189A14.

4.      Count II will proceed to trial solely on the issue of whether Plaintiff's

- 23 -

damages resulted from Ocean Walk's breach.

**DONE AND ORDERED** in Orlando, Florida, this day of July 18, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:

Counsel of Record